I know you're familiar with the facts, and I want to jump right into the issue. The issue is causation. We submit that the decision of the Commission is not only contrary to the law, but against the manifest weight of the evidence. I'd like to start with basically the rendition of the injury itself as a herniated disc, L4-L5. We have a documented accident, compensable, found by the Arbitration Commission, of an injury occurring at work on July 18, 2005, injuring his lower back. On that date, Mr. Turner reported to his employer this accident. They sent him to their occupational clinic, St. Therese Medical Center. They document the injury occurring that day at work. What happened? He injured himself twisting, doing work, lifting at work. They document the work. Mr. Turner fills out an accident report with his employer that day. Then he goes for physical therapy. Two days later, same history again. Stocking shelves, repetitive lifting, and twisting. Injured his back on July 18, 2005. Now, we do have a pre-existing condition. There's no dispute about that. He had a herniated disc a year prior, June 2004, as a result of a motor vehicle accident. There's no dispute about that. But what the Commission and the arbitrator failed to do is follow the law in this case. The law is perfectly clear. If the work accident is a cause of the injury, or that the work accident aggravated or accelerated the condition, then it's compensable. It's clear. So if they say it's a temporary exaggeration, that still applies? In this case, the Commission did not find it was a temporary aggravation. They found that there was no causal connection. And not only that, but they took it one step further and based their opinion on evidence that doesn't exist in the record. First and foremost, they cite in their decision that both the treating physician and the IME physician said that the current condition was related to the motor vehicle accident. That's not true in either respect. First of all, the treating physician clearly opined his opinion about the causal connection of the current condition. He did admit, yes, the herniated disc existed. It was there. But he clearly opined on direct and cross-examination in nauseam about the current condition being a result of the aggravation that he sustained at work on July 18, 2005. What did Dr. Shapiro say? Dr. Shapiro said, yes, he had a temporary aggravation. But he couldn't say anything more than that because he was relying on a temporary aggravation that he had 75 percent relief of his symptoms after his epidural injections. He couldn't respond to any of my questions, well, 75 percent isn't 100 percent. How is that only a temporary aggravation? When I asked him his question about, well, when did the temporary aggravation end? What did Dr. Shapiro say as to whether the temporary aggravation necessitated the need for surgery? He said he was going to need the surgery anyways. He said it didn't accelerate. It either didn't. Well, he did not say that it didn't accelerate. He said he was going to need the surgery anyways. Well, he did not say that it didn't exceed, accelerate the need for surgery. He didn't use those phrases? Oh, he did say that it accelerated the need for surgery, but he said he needed the surgery anyways. He was going to need the surgery anyways. I think we're mixed up in my phrase. I just want to find out. Did Dr. Shapiro say that his work accident did not accelerate his need for surgery? He did not opine that the work accident accelerated the need for surgery. He opined that he did not. I said that he opined that he didn't. That was my question, didn't, not did. He did not. He did not what? I'm sorry. Did Dr. Shapiro opine that his work accident did not accelerate his need for surgery?  Was that his opinion? Okay. All right. To take that one step further, his opinion was that it did not accelerate because he was going to need the surgery anyway. And it was a temporary aggravation that he occurred on that date and that it was resolved when he had the epidural injections. So why can't the commission adopt that position? Because it's not, in fact, when I asked him about when the temporary aggravation was resolved, he points to a point where 75% resolution of symptoms, which the evidence reflected was a temporary 75% resolution of the symptoms. There was never any recommendation for surgery prior to this date. He had complete resolution of his symptoms for over a year until his documented compensable accident on July 18, 2005. It's not a credible opinion based upon the evidence in the record. One year, completely symptom-free. One year, full-duty working, doing heavy work. One year, didn't seek any medical treatment. He had also undergone a physical therapy program from his prior injury, had no complaints of back pain while undergoing any of this physical therapy work for a year. So the fact of the matter is that it's contrary to law because the law is clear. We have a documented accident aggravating and accelerating his need for surgery. There was never any recommendation for surgery prior to this. No treatment that would indicate at all that there was any complete resolution of his symptoms after this work accident on July 18, 2005. Does Dr. Dudinsky help you? I believe Dr. Dudinsky, at his deposition, clarified what his opinions were. And I think that's very important to realize here. There's no dispute that herniated disc itself occurred in 2004. It's on the MRI. It's there. But didn't Dr. Dudinsky's unsolicited, so to speak, initial medical opinion, attribute the claimant's current condition of ill-being to the accident in March 2004? No. He attributed the herniated disc to the motor vehicle accident in 2004. He attributed his current condition of ill-being and symptoms to the aggravation that occurred on July 18, 2005. I think that's an extremely important point that needs to be parsed out in this record. The court also may have a different argument, but go on. It has been argued current condition. But I think it's extremely important to differentiate current condition versus the herniated disc. Dr. Dudinsky, in that initial office note, noted the patient had complete resolution of symptoms, had no treatment since June of 2004 until this incident on July 18, 2005 aggravated his condition while at work. Never opined that the current condition itself, that's what I'm saying, does not exist in the record. There's nowhere in this record that Dr. Dudinsky ever opined that the current condition itself was a result of the motor vehicle accident. He does admit that the herniated disc was a result of motor vehicle accident, but the current condition was a result of the aggravation that occurred on July 18, 2005. And I think that's the most important point of all of this, because if we take it one step further again, the decision itself by the arbitrator and commission, they state in there, it's just wrong, that both the treating physician and IME physician have opined that the petitioner's current condition of ill-being is related to the motor vehicle accident in 2004. Neither one of the physicians did. How come you couldn't convince Commissioner DiMuno? How come I couldn't? I would have to ask Commissioner DiMuno on that aspect. I don't know. I thought that I had him convinced at the time of the arguments, and then we got back to the decision, and apparently I didn't convince him. And that's why we're here today. I'm confident that when this is looked upon, that this will be realized, that the decision itself is wrong, that the reference that I just cited to you in the arbitrator's decision is not true, does not exist in the record. It's just not true. So we take it to one step, and what the law actually says in cases like these, we have a documented compensable accident. The arbitrator even found he had an accident on that day, confirmed by the commission, accident on that day. So where is it then that there's a temporary aggravation when there's no evidence in the record that it was only a temporary aggravation? Even their own IME doctor couldn't point to it was only a temporary aggravation. He couldn't point to an end point where he had 100% resolution. There was no 100% resolution. If you don't have 100% resolution, you can't have a temporary aggravation. And there was never any indication of surgery being recommended prior to this aggravation occurring. It's Dizinski versus Shapiro. The commission chooses Shapiro, and you argue Shapiro is not credible. That's the whole thing in a nutshell. For the most part, but I take it one step further. It's not just that Shapiro is not credible and his opinion is not based on the evidence, but the commission's decision is not just based on Shapiro. They didn't come out and say we're going to adopt the opinion of Dr. Shapiro. That's not what they did. They're taking evidence that doesn't exist in the record that, I just quoted, the current condition of ill-being. That is not in the record. Neither physician opines of that. Does he have a herniated disc? He does. Is that a condition of ill-being? That is a condition of ill-being if it is symptomatic. If it's not symptomatic, it's not ill-being? Would you like to have one even though it's not symptomatic? I would submit that if a condition exists and it's not causing any problems. It's not a condition of ill-being? Is it the way the body belongs? It's a condition. It's a condition that wasn't symptomatic. Come on, cut it out. You know it's a condition of ill-being. And the question becomes, he had the herniated disc at all through the entire thing. So what's wrong with the commission saying that Dizynski agreed that his condition of ill-being was, you know, was the herniated disc? That's not what Dizynski said, though. What did he say? He said that the herniated disc was a result of motor vehicle accident. Current condition, the symptoms that he was having was a result of the aggravation. Ah-ha. If you reduced it to what he said about the symptoms he was having as opposed to the phrase condition of ill-being, we may not have a semantic argument on it. And that's what I'm submitting to you, is the symptoms and the recommendation versus surgery are a result of the aggravation that occurred on that day. But Dr. Dizynski, that's your doctor, and we should follow what he said? I not only would submit that you follow Dr. Dizynski's recommendations, but even their own IME physician said, yeah, he needs a surgery. He had an aggravation on that day. The only part that I'm saying is that the temporary aggravation isn't legitimate, isn't a legitimate argument on his behalf because he couldn't point to when the temporary aggravation ended. Well, apparently the commission looked at Dr. Dizynski's switch around from one way to another way to another way. I can see why they wouldn't want to believe you. Well, first of all, there was no indication in the decision that there was any switching around. That's been the argument. Well, then, excuse me. You're not correct here. During the deposition of Dr. Dizynski, and I'm reading from their writing, in the arbitration decision, during the deposition of Dr. Dizynski, the physician for the first I haven't got my glasses on. Upon direct prompting from Petitioner's attorney attempted to testify that the aggravation at work on July 18, 2005 was a component cause for the need for medical treatment and the recommendation for a micro disectomy. He admitted during cross-examination, however, that this statement was directly contrary to his statement in the medical record that the symptoms he has now end from the disc herniation that occurred at work in 2004. And that's my point. I argued in my brief exactly. That's just not true. He didn't do that in cross-examination? He didn't?  He never changed his opinion. That office note of October 11, 2005 reads for itself exactly what happened. There was no change in opinion. That change in opinion was the argument made by counsel. It's a great argument. But the fact of the matter is that's not what happened. And if you look at the records, October 11, you look at the letter that he prepared, the narrative report in response to me, and his deposition testimony, it was all consistent. And I think, again, it goes back to the point that we have a preexisting condition. There's no dispute about that, a herniated disc. We have it documented in the records from the first AEC treatment of what happened. Dr. Dudzinski, in his first date of treatment, also states, aggravated on July 18, 2005. I would agree with you if he had actually said that the herniated disc didn't exist or it was a result. There's no doubt that that herniated disc existed. There's no question about that. But the law is clear about a cause and aggravation and acceleration. And this is a classic example of that. We have a documented accident, aggravated his condition, accelerated his need for surgery. That's exactly what happened in this case. We have over one year that he was symptom-free, a documented accident, explaining what happened, how he injured his back, and then the need for the surgery. So it accelerated the need for surgery? Is that what you're saying? Yes. Didn't Dudzinski at any point in his letter state that the need for surgery is related to the re-aggravation? In his narrative report? Yeah. He did not put that in his narrative report. But he did testify to what he was asked at his time in his deposition. And he was sort of impeached by his earlier opinion. It's not consistent, is it? Well, there was no prior opinion that he said the surgery was a result of a motor vehicle accident. So there was no impeachment of his testimony. He was perfectly clear in his testimony that he had a herniated disc. There was no impeachment at all. I clarify that in my briefs when you look at the entire testimony of what his opinion was. What about the commission doesn't believe him? There's no basis for their decision to otherwise. Let's say they don't believe Dudzinski. There's still no other basis for them to deny the compensation, even if they relied on Dr. Shapiro. He testified to temporary aggravation but couldn't point one temporary aggravation at him. Time is up. You'll have time for rebuttal. Thank you. Counsel, please. May it please the Court. My name is Emily Borg. I represent Coca-Cola Enterprises in this matter. I think we're skipping a couple steps here. I think the first one is that the appropriate standard of review in this case is the manifest weight of the evidence. The sole issue that's before you today, as counsel acknowledged, is that of medical causation. And there are conflicting medical opinions in this case. Whether causal connection exists is a question of fact for the commission. And its decision will not be overturned unless it's against the manifest weight of the evidence. Counsel seems to be saying, to summarize, that there's no evidence, essentially, to support the commission's decision. What evidence specifically can you point to that answers his argument? Well, I think that the key to the decision and, you know, is directly contrary to counsel's argument that Dr. Dudinsky did not offer the opinion that the condition of ill-being is related to the motor vehicle accident. The key is this medical record. And in answering your honor, it's not Dr. Shapiro versus Dr. Dudinsky. It's Dr. Shapiro and Dr. Dudinsky versus Dr. Dudinsky. He first, you know, in an unsolicited treating record, which was contemporaneous with treatment, says, and I'm going to read it because I think it's that important. After reviewing his record today, I believe strongly that Tim did sustain a work-related injury in March of 2004, where he herniated a disc at L4-L5, which was symptomatic but treated conservatively and responded well. However, he had a re-aggravation of his symptoms on July 18, 2005, which I believe stems from his original injury. The fact that he was doing well for approximately one year just notes that the epidural injections worked initially, but ultimately the symptoms he has now are from the disc herniation that occurred at work in 2004. I don't know how you can interpret that any other way than the symptoms now, the current condition of well-being is from, is related to the 2004 motor vehicle accident. And it's from that point forward that we start to attempt to backtrack from that opinion. Now, we get a solicited letter from Dr. Dudinsky about nine months later, which actually doesn't change his opinion. It just says, again, these epidurals are temporary. He mentions the aggravation at work with Coca-Cola in 2005, but he specifically refers back to this letter for his opinions on causation. And it's not until we take the deposition of Dr. Dudinsky that he offers the opinion that this lifting incident accelerated the injury and resulted in the need for surgery. And he was impeached, because when I asked him, isn't that contrary to the opinion that you offered in this record, he said yes, period. Now, I'll agree there's a statement afterward, which Petitioner's Counsel I think is referring to as a qualifier, but I don't believe it does that. It just reiterates that he thinks this was an aggravation. And if you look at the record, immediately before that, he makes a comment about how he was insinuating. He was insinuating in this record that the treatment now is related to that second incident. And the commission within its province chose to disregard that insinuation. It looked at this concrete, unsolicited opinion that Dr. Dudinsky gave, and said, well, I don't think that's true. And found it more credible. How do you answer his secondary argument that the acceleration of a preexisting condition should be compensable? Well, I don't believe there was an acceleration in this case. You know, Dr. Shapiro's opinion was clear, that he did not believe there was any material change to the disc herniation. His symptoms, he reviewed the MRIs. You know, basically, he was back to baseline. You know, and there is such a concept as a temporary aggravation. And that's essentially what Dr. Dudinsky was opining to. Had he stopped in this sentence, in this report, and said he re-aggravated his symptoms on July 18, 2005, I would be in a different spot today. I would have. But he didn't say that. No. He didn't. He went on to specifically say the symptoms now are related to the original injury. So I agree with everything counsel said about that he did have a documented herniation. And he did have a preexisting condition. What we're contending with is his own doctor's opinion. And that opinion is not credible, not only credible just by itself, but by the remainder of the record. The MRIs, pre- and post-accident, our accident, were the same, according to both doctors. The petitioners himself reported the pain was identical. He had radiculopathy on the right side before and after our accident. Both the treating and the independent doctor discussed the epidurals following the initial injury. And he referred to the initial incident as temporary relief with the expectation that the pain would return. I think that Dr. Shapiro's opinions are wholly supported in his deposition testimony. And again, it's not just the classic case of a treater versus an IME. It's a treater and an IME versus a later opinion by the treater. And if I'm understanding the petitioner's argument correctly, it seems to say we had an accident, and because we had a preexisting condition, now we have compensability. And I think that there's a greater burden there. And he has the burden to establish causation, which is the relationship between that particular pain on that day and the end results. And just to briefly address his argument regarding CISBRO, we do not take issue with the holding in CISBRO. You know, we agree that that's what CISBRO holds. It needs only be a causative factor. But in this case, that was not established. The commission clearly found that causation was lacking. And there was not a suggestion that causation was found and then somehow defeated. And CISBRO does not stand for the principle that when presented with conflicting medical evidence, the commission has to accept the petitioner's version of the facts because it supplies a causative theory. The evidence that was before the commission wholly supports its findings, and therefore the commission's decision is not against the manifest weight of the evidence. Respondent would respectfully request that the decision of the commission be affirmed. Next. If I may, Your Honor, read to you the actual deposition testimony that she was just referring to with regard to his answer to the question. On cross-examination, the question was posed by counsel. Isn't it true that your testimony today is the first time you have offered an opinion that the July 18, 2005 incident, being an aggravation or not, was a cause for the need for surgery? Answer. Well, I think is that I think that on my May 9, 2006 report, when I say he had a re-aggravation of his symptoms on July 18, I'm insinuating that the treatment is secondary to his symptoms following that date. Question. Isn't that directly contrary to your statement, doctor, that, quote, the symptoms he has now are from the disc herniation that occurred in 2004, end quote? Answer. Yes, and that's where she stopped. But he continued saying, however, he was, as I stated previously, he was asymptomatic for over one year, and that is a long enough period of time when I think that the new injury re-aggravated his preexisting disc herniation condition. And that's the whole point of what I'm trying to say. There is no dispute that the disc herniation is the same disc herniation that I think the doctor clarified his opinion about, that yes, the symptoms, everything is stemming from the same disc herniation. It is not a new disc herniation. We give you that. There is no dispute about that. But the symptoms now are clearly a result of the aggravation that occurred on July 18. There was no change in his testimony about that. There was no dispute in Dr. Shapiro's testimony that he at least had temporary aggravation, which taken it one step further, if the commission was relying on Dr. Shapiro's testimony that it was at least a temporary aggravation that ended when he had 75 percent relief, then medical benefits should have been granted at least through that point in time. That wasn't even done. Their decision itself is just contradictory. There's just no basis for it. Even if they're going to, like I said, if they're going to go with that opinion, which they didn't, they just basically said that both doctors... So Dr. Shapiro didn't say that the 2004 incident was the cause for the need for surgery? Dr. Shapiro? He said the herniated disc that he sustained in 2004 was the cause for the need for surgery, yes. What happened? But Dr. Shapiro also said that he sustained an aggravation, a temporary aggravation, July 18, 2005, that the treatment as a result of that was reasonable and necessary, and agreed with that treatment that it was a result of the aggravation on July 18, 2005. Yet the commission, if they're relying on that, didn't even award the benefits up to that point in time, even on medical treatment, when their own, if that's the opinion that they're relying on, said it was reasonable and appropriate treatment as a result of the aggravation on that date. But that's not what the commission or the arbitrators are saying. They're saying, which is wrong, I've read that to you before, they're saying that both doctors are saying the current condition is related to the prior accident. Neither doctor is really saying that. And that's what I'm saying. The decision itself is contrary to why I do believe there should be a de novo review standard here, because based upon CISPRO and the law that was set forth in CISPRO, what it is about a cause, aggravation, acceleration. We have clearly a documented work accident on that date. Everyone found that. There was no dispute about that. We have an aggravation of the condition. Everyone seems to agree that there was an aggravation of the condition on that date. And now there's a recommendation for surgery, which clearly accelerated his need for that surgery, when there was never any recommendation for a surgery prior to that date. So I think all the requirements have been met according to the law to have a compensable case under the Illinois Workers' Compensation Act and the case law set forth by the Supreme Court in CISPRO. I don't believe there's anything wrong with that. Well, what did the arbitrator mean when he said both the treating physician and the IME physician find that the petitioner's current condition of ill-being is related to the motor vehicle accident in 2004? I have no idea what they're referring to, other than if they're taking the position that the herniated disc itself was a result. But there's no support for that statement in the record. And even counsel in their briefs couldn't point to anywhere to support this statement. This is a statement that's unsupported by the facts and the record and evidence. And if that's the case, then the decision itself should be reversed because there's no basis for the decision in the record itself. Neither doctor actually opined that. And I believe strongly that this decision is against, it's contrary to the law of what is necessary to find a compensable case. We have a documented preexisting condition, an aggravation of that condition, an accelerated need for surgery. Thank you, counsel. We respectfully request that the decision be reversed.